IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| AMANDA DYER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:11-CV-2558-N |
| | § | |
| UNITEDHEALTHCARE INSURANCE | § | |
| CO., | § | |
| | § | |
| Defendant. | § | |

## ORDER

This Order addresses Plaintiff Amanda Dyer's motion to compel [11].  For the reasons

that follow, the Court grants the motion in part and denies it in part.[1]

### I. BACKGROUND AND ORIGINS OF THE CASE

Dyer brought suit against Defendant UnitedHealthcare Insurance Company ("United")

in state court on August 23, 2011.  *See* Pl.'s Pet. [1-3].  She alleges that she was a member

of United's Choice Plus Health Insurance Plan (the "Plan"), which provides payment for

healthcare expenses.  *Id.* at ¶ 5.  In 2010, Dyer went to Schick Shadel Hospital in Seattle,

Washington for "aversion therapy" treatment for chemical dependency, where she incurred

---

[1]There is an outstanding issue in this case of whether Dyer's Texas Insurance Code claims fall within the "savings clause" of the Employment Retirement Income Security Act of 1971, as amended, 29 U.S.C. § 1001, *et. seq.* ("ERISA"), *see* 19 U.S.C. § 1144(b)(2)(A), and therefore survive ERISA preemption, *see* Joint Status Report 3, which may change the scope of discovery.  The parties have agreed to present the preemption issue to the Court on an expedited basis.  Accordingly, the Court will reserve ruling on any non-ERISA discovery until after it rules on the preemption issue.

$20,794.66 in medical costs.  *Id.* ¶ 6; Pl.'s Mot. Compel 1.  She claims that the Plan covers these costs, which she avers were for reasonable and necessary medical treatment, but that United has not paid them.  *Id.* ¶¶ 6-7.  Dyer alleges causes of action for violations of the Texas Insurance Code, § 541.003, *et seq.*, the Texas Deceptive Trade Practices Act, TEX. BUS. & COMM. CODE § 17.46, and breach of contract.  Pl.'s Pet. ¶¶ 9-14.  United removed the case on September 29, 2011, alleging that ERISA preempts Dyer's state law causes of action.  Def.'s Notice Removal 2-3 [1].[2]

Dyer now moves to compel discovery.  She argues that United failed to answer several of her Requests for Admission, Interrogatories, and Production, seeking "information concerning the compilation of the administrative record, prior handling of substance abuse claims[,] information concerning payment for aversion therapy, and payment history of claims at Schick Shadel Hospital for aversion therapy."  Pl.'s Mot. Compel 2.[3]  She claims that her discovery requests are sufficiently narrow under the Fifth Circuit's ERISA discovery precedent in *Crosby v. Lousiana Health Service & Indemnity Company*, 647 F.3d 258 (5th Cir. 2011), and that the Court should therefore compel United to answer these requests. United responds that it has produced everything to which Dyer is entitled under *Crosby*, including "the Plan documents and all claims and correspondence and internal United

---

[2]Alternatively, United bases federal jurisdiction on diversity of citizenship under 28 U.S.C. § 1332(a).  Def.'s Notice Removal 3-4.

[3]Specifically, Dyer moves the Court to compel United to answer: Interrogatory Nos. 3, 5-7, and 10-13; Requests for Production Nos. 1-9, 11-13, 14-16, and 18-21; and Requests for Admission 7 and 8.  Pl.'s Mot. Compel 2-3.

documents that were available to, and considered by, United in connection with [Dyer's]

medical claim." Def.'s Resp. 3 [7].

## II. THE COURT GRANTS IN PART AND DENIES IN PART DYER'S MOTION TO COMPEL

### *A. Discovery Standard*

Under Rule 26(b), "parties may obtain discovery regarding any nonprivileged matter

that is relevant to any party's claim or defense . . . ." FED. R. CIV. P. 26(b)(1). Relevancy

"has been construed broadly to encompass any matter that bears on, or that reasonably could

lead to other matter that could bear on, any issue that is or may be in this case."

*Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351 (1978). Thus, a court should allow the

requested discovery "if [it] appears reasonably calculated to lead to the discovery of

admissible evidence," FED. R. CIV. P. 26(b)(1), or "unless it is clear that the information

sought can have no possible bearing on the subject matter of the action," *e.g.*, *Snowden v.*

*Connaught Lab., Inc.*, 137 F.R.D. 336, 341 (D. Kan.1991). The Fifth Circuit has applied

Rule 26's standards to ERISA cases. *Crosby*, 647 F.3d at 262. And a district court has wide

discretion to supervise discovery. *Landry v. Air Line Pilots Ass'n Int'l AFL-CIO*, 901 F.2d

404, 436 n.114 (5th Cir. 1990) (citing *Pan-Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d

539, 550 (5th Cir. 1980)).

### *B. Under* **Crosby***, Dyer is Entitled To Some Discovery Beyond the Administrative Record*

The Fifth Circuit articulated the scope of permissible discovery in ERISA cases in

*Crosby*. There, the Circuit explained that its ERISA precedent, *Vega v. Nat'l Life Ins. Servs.,*

*Inc.*, 188 F.3d 287, 299-300 (5th Cir. 1999) (en banc), *abrogated on other grounds by Metro. Life Ins. Co. v. Glen*, 554 U.S. 105 (2008), "prohibits the admission of evidence to resolve the merits of the coverage determination – i.e. whether coverage should have been afforded under the plan – unless the evidence is in the administrative record, relates to how the administrator has interpreted the plan in the past, or would assist the court in understanding medical terms and procedures." *Crosby*, 647 F.3d at 263.  That is, "[a] plan participant is not entitled to a second chance to produce evidence demonstrating that coverage should be afforded." *Id.* (citing *Vega*, 188 F.3d at 299-300).  This prohibition does not apply, however, to the admission of evidence regarding other questions which may arise in an ERISA case. *Id.*  "For example, in an ERISA action under 29 U.S.C. § 1132(a)(1)(B), a claimant may question the completeness of the administrative record[, *Estate of Bratton v. Nat'l Union Fire Ins. Co.*, 215 F.3d 516, 521 (5th Cir. 2000)]; whether the plan administrator complied with ERISA's procedural regulations[, *Lafleur v. La. Health Serv. & Indem. Co.*, 563 F.3d 148, 150 (5th Cir. 2009)]; and the existence and extent of a conflict of interest created by a plan administrator's dual role in making benefits determinations and funding the plan[, *Glenn*, 554 U.S. at 117,]" because "[t]hese issues are distinct from the question of whether coverage should have been afforded under the plan." *Id.*  Accordingly, "[a] discovery request for such information may be relevant and thus permissible under federal discovery rules." *Id.* (citing *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 276, 820 (5th Cir. 2004)).[4]

_____

[4]The Circuit in *Crosby* went on to hold that plaintiff's discovery request "was at least reasonably calculated to lead to the discovery of some admissible evidence" where she sought evidence indicating whether the administrative record was complete, whether the

The Court does not understand Dyer to argue that the discovery she seeks relates to a possible conflict of interest. *See* Pl.'s Mot. 2-3. Accordingly, for the Court to compel discovery under *Crosby*, Dyer must prevail on her contentions that the disputed discovery requests relate (1) to the completeness of the administrative record, (2) to the possibility that United failed to comply with ERISA's procedural requirements under section 1132(a)(1)(B), *see id.* at 2 (stating that "[the] interrogatories in question were requesting specific information concerning the handling of the Dyer claim" and "[t]he Request for Production consisted of 21 specific requests for documents concerning the handling of the Dyer claim"), or (3) to whether United has previously afforded coverage for claims for similar injuries or conditions.[5] *See Crosby*, 647 F.3d at 263-64.[6]

---

ERISA plan administrator complied with ERISA's procedural requirements, and whether the administrator had previously afforded coverage for claims for similar injuries or conditions. 647 F.3d at 263-64.

[5]The Court notes that Dyer has provided insufficient information for the Court to meaningfully review some of her discovery requests. Accordingly, the Court analyzes only those of Dyer's requests from which it can ascertain that the information sought may lead to admissible evidence.

[6]Though no case has directly addressed the precise issues presented here in depth since *Crosby*, the few courts interpreting *Crosby* in this Circuit have done so in narrow circumstances, usually preventing an ERISA plaintiff from supplementing the record itself as it relates to review of the coverage determination. *See Jurasin v. GHS Prop. & Cas. Ins. Co.*, 2012 WL 612559, at *3 (5th Cir. 2012) (upholding district court's decision refusing to allow ERISA plaintiff to supplement the record by striking portions of expert's affidavits which did not help the court understand medical terminology or practice); *Tyree v. Hartford Life & Accident Ins. Co.*, 2011 WL 4352006, at *2 (S.D. Miss. 2011) (holding that plaintiff would not be allowed additional discovery where plaintiff merely sought to supplement the record and offered speculative assertions about a conflict of interest but did not claim that any further discovery would help in the understanding of medical terms and procedures, request information about the administrator's past interpretation of the plan, or request

*1. Requests Regarding Whether United's Administrative Record is Complete.* – The

Circuit in *Crosby* explained that a court may admit evidence to determine whether the

administrative record is complete, and a plaintiff may therefore need to discover evidence

regarding whether it has the complete record.  647 F.3d at 263-64.  This proposition stems

from *Barhan v. Ry-Ron, Inc.*, 121 F.3d 198, 201-02 (5th Cir. 1997).  *See Crosby*, 647 F.3d

at 263.[7]

In *Barhan*, the Circuit reviewed a district court's grant of the defendant-plan

administrator's motion for summary judgment and explained that "it is the plan

administrator's responsibility to compile a record that he is satisfied is sufficient for his

decision" and "to identify[] those portions of the pleadings, depositions, affidavits or other

factual support that demonstrate that it did not abuse its discretion in rejecting the

beneficiary's claim" under the usual summary judgment standards.  121 F.3d at 201 (internal

information about the administrator's compliance with ERISA procedures); *Hamburg v. Life Ins. Co. of N. Am.*, 2011 WL 3269689, at *2 (E.D. La. 2011) (explaining that any supplementation of the administrative record must take place before plaintiff files suit in federal court and refusing to admit Social Security Administration's decision regarding plaintiff's disability which was not before the administrator). *But see Sanford v. TIAA-CREF Indiv. & Inst. Servs., LLC*, 2012 WL 113683, at *2 (S.D. Miss. 2012) (addressing completeness of the record and ordering ERISA administrator-defendant to identify places in the record where plaintiff and court questioned completeness of the record so plaintiff could address any issues in a subsequent motion).

[7]*Crosby* cites *Estate of Bratton*, 215 F.3d at 521, for the proposition that "a claimant may question the completeness of the administrative record."  *Crosby*, 647 F.3d at 263. *Bratton* in turn cites *Vega*, 188 F.3d at 295, for the proposition that "a plan administrator has an obligation to identify the evidence in the administrative record and the claimant must be afforded a reasonable opportunity to contest whether that record is complete." *Bratton*, 215 F.3d at 251.  Finally, *Vega* cites *Barhan*, 121 F.3d at 201-02. *Vega*, 188 F.3d at 295.

citations omitted).    It went on to analyze the record before it, explaining that the

administrator provided an incomplete record, precluding summary judgment. *Id.* at 202.

As it relates to discovery, the Court reads *Barhan* to imply that, while a court may not

review the merits of the decision based on evidence not before the ERISA administrator

during the appeals process, a court may allow a plaintiff to submit evidence intended to show

that "the administrative record compiled by [the administrator] failed to contain all relevant

information made available to [the administrator] prior to the filing of th[e] suit." *Crosby*,

647 F.3d at 264.   To submit that evidence, a plaintiff may need to conduct discovery to

determine if the record it receives is missing anything. *See Sanford*, 2012 WL 113683, at *2

(where ERISA plaintiff sought discovery of documents referenced in the record as being sent

to "imaging" but not included in the record, ordering that defendant notify the court and

plaintiff in writing of "the specific instances in the record where documents were sent to

'imaging' and do not appear" in the record and allowing for parties to address any

outstanding issues via subsequent motion).

Under this rationale, the Court reads several of Dyer's discovery requests as seeking

information which may lead to admissible evidence[8] regarding whether the record United has

---

[8]The Court reemphasizes that all of the discovery Dyer seeks need not itself be admissible – the discovery must merely be reasonably calculated to lead to the discovery of admissible evidence.   As a leading treatise puts it: "[I]t should be kept in mind that a clear distinction is made between the right to obtain information by discovery and the right to use it at the trial.   [Federal Rule of Civil Procedure] Rule 26(b) allows great freedom in discovery."   8 CHARLES A. WRIGHT, ARTHUR R. MILLER, MARY K. KANE, & RICHARD L. MARCUS, FEDERAL PRACTICE & PROCEDURE § 2007, at 120 (3d ed. 2010); *see also* 2000 advisory committee's notes, FED. R. CIV. P. 26.  ("Accordingly, this sentence has been amended to clarify that information must be relevant to be discoverable, *even though*

provided her is complete.  Specifically, it finds the following requests permissible:

Interrogatory No. 10 (requesting that United state all reasons it denied Dyer's claim for lack

of medical necessity); Request for Production Nos. 1-4 and 8 (documents United may have

used in reviewing Dyer's claim); Request for Production No. 6 (those of Dyer's medical

records United obtained in consideration of her claim); Request for Production No. 7 (any

correspondence between United and treating health professionals); Request for Production

Nos. 12-13 (written statements, reports, evaluations, correspondence, and medical records

between United and a Doctor Thomas Hamlin before September 3, 2011); and Request for

Production No. 18 (copies of a contract between Schick Hospital and United Benefit Health,

which Dyer claims the record references at page 150).  *See* Pl.'s App. to Pl.'s Mot. Compel,

Ex. 3, pp. 7-18, Def.'s Objections & Answers to Pl.'s 1st Set Interrogs. [6-2] [hereinafter

Def.'s Objections to Interrogs.].

   *2. Requests Regarding Whether United Followed ERISA's Procedural*

*Requirements.* – In *Lafleur* – the case *Crosby* cites to support its holding that a plaintiff may

discover documents relating to procedural violations – the Fifth Circuit explained that it

evaluates challenges to ERISA procedures as articulated by 19 U.S.C. § 1133 and the

Department of Labor Regulations regarding that section under a "substantial compliance"

standard, which "means that the technical noncompliance with the ERISA procedures will

be excused so long as the purpose of section 1133['s procedural requirements] ha[ve] been

---

*inadmissible*, and that discovery of such material is permitted if reasonably calculated to lead
to the discovery of admissible evidence.").

fulfilled."[9]   563 F.3d at 154 (internal quotations and citations omitted).  "The purpose of

section 1133 is to afford the beneficiary an explanation of the denial of benefits that is

adequate to ensure meaningful review of that denial."  *Id.* (internal quotations and citation

omitted).  "The substantial compliance test also considers all communications between an

administrator and plan participant."  *Id.* (internal quotations and citations omitted).  The

Circuit in *Lafleur* found that an ERISA administrator did not follow ERISA's procedural

requirements where

> (1) it raised new grounds for denial in the federal courts which were not raised
> at the administrative level; (2) it did not identify [a doctor], despite [plaintiff's]
> request for this information; (3) it relied on the same [doctor's] opinion in the
> initial denial and in the administrative appeals; (4) to the extent it did not rely
> on the [doctor's] opinion in the administrative appeals, it relied on [another
> doctor's] opinion even though he did not possess the appropriate training and
> experience in the field of [the health problem at issue]; and (5) it effectively
> gave deference to the initial denial.[10]

563 F.3d at 154-55.

Several of Dyer's requests relate to (1) communications between her and United, (2)

information about potential persons involved with United's decisions, and (3) the procedure

---

[9]29 U.S.C. § 1133 provides:
[E]very employee benefit plan shall (1) provide adequate notice in writing to
any participant or beneficiary whose claim for benefits under the plan has been
denied, setting forth the specific reasons for such denial, written in a manner
calculated to be understood by the participant, and (2) afford a reasonable
opportunity to any participant whose claim for benefits has been denied for a
full and fair review by the appropriate named fiduciary of the decision denying
the claim.

[10]*See* 29 C.F.R. § 2560.503-1(h)(3)(ii)-(v) (listing the ERISA procedural requirements
at issue in *Lafleur*).

United used to determine her claim, which may all be relevant and admissible under *Lafleur*.

Specifically the Court finds that the following requests may lead to the discovery of

admissible evidence regarding procedural fairness: Interrogatory No. 3 (employees involved

with United's decision about Dyer's claim); Interrogatory No. 6 (procedure United used to

determine Dyer's claim was not a covered benefit); Interrogatory No. 11 (identity of all

individuals who participated in denying Dyer's claim); Request for Production No. 7

(correspondence between United and any healthcare professional about Dyer's claim);

Request for Production No. 9 (notes or recordings of a telephone conference with Dyer);

Request for Production No. 12 (statements or correspondence between United and a Doctor

Thomas Hamlin). *See* Def.'s Objections to Interrogs., pp. 5-17.

   *3. Requests Regarding Whether United Has Interpreted the Plan Differently in the*

*Past or Previously Afforded Coverage for Claims for Similar Injuries or Conditions.* – In

*Crosby*, the Circuit explained that, under the standards in *Vega*, a court may look to evidence

not in the record which "relates to how the administrator has interpreted the plan in the past."

647 F.3d at 263.  It went on to hold that the plaintiff's discovery requests were reasonably

calculated to lead to the discovery of admissible evidence where she sought information

about whether the administrator had previously afforded coverage for claims for similar

injuries or conditions. *Id.* at 263-64.

   The Court finds that here, as in *Crosby*, several of Dyer's discovery requests are

reasonably calculated to lead to admissible evidence regarding United's prior interpretations

of the Plan as it relates to Dyer's claim. Specifically, the following requests meet *Crosby*'s

threshold: Request for Production No. 11 (United's medical guidelines that United contends should have been applied to Dyer's claim); Request for Production No. 15 ("a copy of all claims for aversion therapy treatment for substance abuse received by [United] and whether or not the claim was paid, and if not, the reason for the denial between 9/1/2009 and 12/1/2011"); Request for Production No. 16 (United's policies and procedures related to its payment of claims for aversion therapy in effect during August and September of 2010); and Request for Production Nos. 20-21 (documents that claim aversion therapy is an excluded benefit or service under the Plan). *See* Def.'s Objections to Interrogs., pp. 16-19.

In sum, the Court finds the following of Dyer's requests permissible under *Crosby*'s standard for ERISA discovery: Interrogatory Nos. 3, 6, 10, and 11 and Request for Production Nos. 1-4, 6-9, 11-13, 15-16, 18, and 20-21.

### C. The Court Overrules United's Burden Objections

United argues that Request for Production Nos. 12, 15-16, and 20-21 are unduly burdensome. Def.'s Resp. 9. Under Rule 26,

> [o]n motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive . . . .

FED. R. CIV. P. 26(B)(3)(I). A court should also limit discovery if "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues . . . ." FED. R. CIV. P.

26(B)(3)(iii).  In *Crosby*, the Fifth Circuit cautioned that, "[b]ecause our review of an ERISA benefits determination is essentially analogous to a review of an administrative agency decision, district courts must monitor discovery closely" and "be mindful of the limitations placed on the frequency and extent of discovery under the federal rules, particularly Rule 26(b)."  647 F.3d at 264.  It continued,

> [f]or instance, a district court must limit otherwise permissible discovery if it determines that the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

*Id.* (internal quotations and citations omitted).

However, United has provided no evidence of undue burden.  *See* Def.'s Resp. 9. Rather, it states: "United believes that its other objections to these facially improper requests should be upheld.  However, should the court determine that it is necessary for United to support its burden objections, United requests the opportunity to submit affidavit testimony establishing the burden and expense to United . . . ."  *Id.*  The Court acknowledges that ERISA seeks to streamline review of benefits decisions and that courts must guard against broad discovery in these cases.  But without a basis to determine how Dyer's requests are burdensome for United, the Court cannot sustain United's objection.  The time for United to submit evidence regarding undue burden was in its response to Dyer's motion to compel. Accordingly, the Court overrules United's burdensomeness objections regarding the discovery requests permissible under *Crosby*.

### C. The Court Sustains United's Privilege Objections

United also objects to several of Dyer's requests on the basis of privilege. *See* Def.'s

Resp. 9. Specifically, United objects to Dyer's Request for Production Nos. 1-4, 6-9, and 11

on the basis of privilege. *See* Def.'s Answers to Interrogs., pp. 14-17 (stating, in United's

answers to Request for Production Nos. 1-4, 6-9, 11, that, "[s]ubject to and without waiving

the foregoing objection, Defendant states that it has produced all relevant, responsive and

non-privileged documents to the Request . . ."). But the attorney-client privilege "may not

be tossed as a blanket over an undifferentiated group of documents." *United States v. El*

*Paso Co.*, 682 F.2d 530, 539 (5th Cir. 1982) (internal citations omitted). Rather, "[t]he

privilege must be specifically asserted with respect to particular documents." *Id.* at 539. The

party seeking to withhold documents from production has the burden of demonstrating the

applicability of a particular privilege. *See*, *e.g.*, *Hodges, Grant & Kaufmann v. U.S. Gov't,*

*Dep't of the Treasury, I.R.S.*, 768 F.2d 719, 721 (5th Cir. 1985); *Nat'l Union Fire Ins. Co.*

*of Pittsburgh, Pa. v. Valdez*, 863 S.W.2d 458, 460 (Tex. 1993).

Under these standards, the Court sustains United's privilege objections to Request for

Production Nos. 1-4, 6-9, and 11. However, it orders United to submit to Dyer, within thirty

(30) days of the date of this Order, a privilege log, indicating for each document: (1) a short

description of the document; (2) the date; (3) the type of document (e.g., email,

memorandum, or letter); (4) the subject; (5) the sender(s); (6) the recipient(s), including those

carbon copied or blind carbon copied; and (7) United's basis for claiming privilege or work

product protection. United shall also submit affidavits or other evidence clearly identifying

the parties involved with the generation or transmission of the documents in United's

privilege log and their role(s) with regard to each document – i.e., outside attorneys, clients,

employees (and their positions), and representatives.  Dyer may then renew her motion to

compel United to respond to those of her requests to which United has claimed privilege on

a specific, document-by-document basis.  *See Sanford*, 2012 WL 113683, at *3 (ordering

ERISA defendant/administrator to submit privilege log to plaintiff for documents in

administrative record it claimed were privileged and allowing plaintiff an opportunity to

challenge the asserted privilege after defendant tendered the privilege log).

### CONCLUSION

The Court grants in part Dyer's motion to compel based on *Crosby*, and it orders

United to respond to those of Dyer's requests that United does not allege implicate attorney-

client privilege: Interrogatory Nos. 3, 6, and 10-11 and Request for Production Nos. 12-13,

15-16, 18, and 20-21 within twenty-eight (28) days of the date of this Order.[11]  The Court

denies in part Dyer's motion to compel based on *Crosby* and United's claim of attorney-563

F.3d at 153-54 client privilege.  However, United must give Dyer a privilege log, as

explained above, and Dyer may reurge her motion to compel United to respond to requests

for which it claims privilege on a specific, document-by-document basis.

---

[11]The Court acknowledges that United claims that it has produced all "the Plan documents and all claims and correspondence and internal United documents that were available to, and considered by, United in connection with [Dyer's] medical claim." Def.'s Resp. 3.  The Court's motion compels United to produce information only to the extent it has not already done so or is in possession of the information.

ORDER – PAGE 14

Signed June 13, 2012.

_____
David C. Godbey
United States District Judge